## No. 14,112.

## LINEHAN RAILWAY TRANSFER COMPANY vs. NEW ORLEANS & NORTHWESTERN RAILROAD COMPANY.

### SYLLABUS.

A contract entered into has the force of law between the parties. Their rights under it are to be determined by that interpretation of its provisions which gives the greater assurance of arriving at the intention of the parties.

APPEAL from the Tenth Judicial District, Parish of Concordia—— *Dagg, J.*

*Samuel Lucuis Elam,* for Plaintiff, Appellant.

*Lazarus & Luce,* for Defendant, Appellee.

The opinion of the court was delivered by

BLANCHARD, J. Plaintiff is appellant from a judgment denying its interpretation of a contract entered into between the Linehan Ferry Company, of which plaintiff is the assignee and successor, and defendant company, and rejecting its demand founded upon such interpretation.

The contract in question was executed in writing between the parties in July 1890, and had for its object the transfer of defendant's passenger, freight and other cars, and locomotives, to and fro, across the Mississippi river at and between the City of Natchez, in the State of Mississippi, and the town of Vidalia, in Louisiana.

Defendant's line of railway crossed the river at that point, and,

hence, the necessity of ferry arrangements for the transfer of its trains over the river.

This transfer service was performed by the Linehan Ferry Company and its successor, the plaintiff company, from the fall of 1890 until November 1st, 1900, when defendant railway company ceased to avail itself of its services. Notice of the discontinuance had been seasonably given by defendant, and on and after the date last mentioned its trains were crossed over the river by means of other arrangements that, meanwhile, had been made.

Plaintiff protested and offered to continue the service, putting defendant regularly in default in respect thereto.

This suit followed. It is predicated upon the idea that the contract made in 1890 did not terminate on October 31st, 1900, and that plaintiff has the legal right to continue to perform the transfer service for defendant after that date, as it had been doing for the ten years prior thereto, and to continue to receive the compensation agreed on in the contract for such service.

The contention of the plaintiff is that the contract stipulates no time for its termination—on the contrary, that it cannot be brought to an end except by mutual consent of the contracting parties.

The object of the suit is to compel defendant to specific performance, and the prayer of the petition is for judgment decreeing the contract to be in force and giving effect to it by ordering defendant to comply with the obligation it had assumed therein.

There is a further prayer, that, in the event the court should hold the contract terminated on the 31st of October 1900, and cannot now be enforced, plaintiff do have and recover of defendant the value of its inclines on both the Mississippi and the Louisiana side of the river.

One of the stipulations of the contract was that the inclines, transfer cradles, etc., should be constructed upon lands owned or leased by defendant corporation at Natchez and Vidalia, and this had been done.

The contention of defendant is that by its terms the contract was to terminate ten years from November 1, 1890, and, therefore, ended on November 1, 1900; and that in announcing to plaintiff its determination not to renew it, it, likewise, gave plaintiff notice to remove its property and plant from its (defendant's) premises.

Its further contention is that whatever works or constructions were placed on its premises by plaintiff were for the latter's own purposes

and convenience, and it (defendant) cannot be compelled to take and pay for the same.

The contract, whose interpretation is at issue, consists of clauses or sections, numbered respectively from one to sixteen inclusive.

It is with the eleventh and thirteenth only that we are here concerned.

The eleventh reads:—

It is further agreed that this contract, in respect to service to be rendered by the party of the second part (plaintiff herein) and the payment to them therefor, shall remain in force, binding upon both parties, for the period of ten years from November 1st, 1890. If, at the end of five years, the party of the first part (defendant herein) wishes to buy out the property of the party of the second part, the basis of profit they allow will be based on the fifth year's business for the remaining five years of contract.

There does not seem to be any ambiguity here. The contract shall remain in force and be binding upon both parties for ten years.

But plaintiff contends this is so only in respect to the service to be rendered by it and payment therefor, and that the words expressive of this limitation clearly show that clause eleven only contemplated a partial change in the contract at the end of ten years, and that elsewhere in the contract must be looked for and found what the real intention of the contracting parties was in respect to the duration of the contract.

It strikes us, however, that when the service plaintiff was to render and the payments therefor defendant was to make are taken out of the contract, nothing of essence is left in it.

Under clause eleven, the obligation of defendant to permit plaintiff to do, for a consderation, its transfer service between Natchez and Vidalia ceased at the expiration of ten years. During the ten year period neither party was at liberty to withdraw from the contract; but, thereafter, either party could withdraw.

That the life of the contract was limited to ten years, and that such was the intention of the parties, is, further, indubitably shown by the concluding sentence of clause eleven. There it is expressed that if defendant at the end of five years wished to buy the property of plaintiff (meaning its inclines and transfer plant and outfit) the basis of profit to be allowed plaintiff was to be predicated on the fifth year's business *for the remaining five years of contract.*

This language—"the remaining five years of contract"—means and can only mean that ten years was the full limit of the contract, five years of which were to elapse before defendant's option to buy arose and then, if it elected to buy, a predicate for the price to be paid for the remaining five years was agreed on.

·Why make use of the expression "for the remaining five years of contract" if the contract was to live and be in force beyond November 1, 1900, which would mark the limit of ten years from its inception?

The reliance of plaintiff is on clause thirteen of the contract as showing the true intention of the parties with respect to the duration of the agreement.

That clause reads:—

It is further understood and agreed that if the parties to this agreement desire it shall finally terminate at the expiration of ten years, herein mentioned, then the parties of the first part (defendant herein) shall have the right to purchase cradles and transfer boats and inclines by paying therefor a fair and just compensation, and if the price cannot be agreed upon, then it is to be left to arbitrators * * * whose decision shall be final.

Plaintiff construes this to mean that the agreement was to be considered terminated at the end of ten years only by consent of both parties; that if either party desired it to continue, it should continue even though this was against the wish of the other party.

Such a construction nullifies, practically, clause eleven.

The true meaning of the thirteenth clause, we think, is that the parties contemplated that while the binding force of the contract as made in 1890 ended in 1900, as set forth in clause eleven, yet it was probable or possible they might desire to renew it, but that if they, or either of them, did not wish to renew and preferred it to finally terminate in 1900, then defendant was to exercise, if it chose, the right to purchase the property at a fair price, and if this price could not be arrived at by the parties themselves, arbitrators were to be called in.

This construction avoids all conflict with clause eleven, and brings clause thirteen into harmonious relation with its sister clause.

To hold that the intention of the parties as evidenced by clause thirteen was the contract should have no term, no period of duration, could not terminate except by mutual consent, is to give it an unusual quality indeed. Like Tennyson's brook:

For men may come and men may go,
But I go on forever.

The construction that would lead to such a result is an impossible one.

Nor was it the one held by plaintiff company prior to the announced purpose of defendant to consider the agreement terminated at the end of ten years, if we are to give weight to the utterances of its chief executive official.

Bart E. Linehan was president of the company and its general manager. He was, too, the owner of the controlling interest of its stock, and one of the five persons constituting its Board of Directors.

On March 20, 1899, he wrote defendant's general manager relative to a renewal of the contract, and this is the way he began his letter:—

As our contract for transferring freight, passengers, etc., expires Nov. 1st, 1900, and these contracts are usually re-arranged a year before the contract expires, I would like to know if you could assure us a renewal of the contract for ten years more.

It is useless for plaintiff to attempt to break the force of this admission of its president as to the time limit of the contract by the plea that that official was without authority to construe the contract—that only the Board of Directors could do that—and that the letter referred to was written without the authority of the Board.

Promptly on receipt of the letter, defendant's general manager replied as follows:

I am in receipt of your letter of the 20th inst. relative to your contract with the company, and which expires on November 1st, 1900. We will be unable to renew the contract in question, as we have made arrangements already in regard to this matter.

Further comment is useless.

With regard to plaintiff's alternative demand, that if it be decreed the contract was limited in duration to November 1, 1900, and specific performance is denied, defendant be held answerable for the value of the works, we find nothing in the contract warranting this. There is a clause which gives defendant the right to purchase the outfit at the termination of the agreement, but not a word putting an obligation upon it to do so.

Defendant does not want the works, they are no value whatever to it, are in the way (being on its property), and has notified plaintiff to remove the same.

The articles of the Code referring to works, constructions and im-

provements put by one upon the soil of another have no applicability here.

The district judge reserved to plaintiff the right to remove its inclines and appurtenances from the land. It is entitled to nothing more.

Judgment affirmed.